[Filed January 30, 1888.]

# DAN MARX, APPELLANT, *v.* CHARLES GOODNOUGH, RESPONDENT.

PARTNERS—SALE OF PARTNERSHIP INTEREST BY ONE—EFFECT OF.—A sale by one partner of his interest in a concern dissolves it; and the assignee or purchaser becomes a tenant in common with the other partners, and such assignee or purchaser may maintain a suit for an accounting against the other partners, and the persons to whom they have transferred their interest.

APPEAL from Union County.     Reversed.

*J. R. Crites,* and *C. H. Finn,* for Appellant.

*R. Eakin,* for Respondent.

STRAHAN, J.—This is a suit in equity, commenced by plaintiff against the defendant for an accounting in relation to the business and property of the partnership of W. S. Wines & Co., which firm consisted of W. S. Wines and H. B. Glover.

The amended complaint is, in substance, as follows: (1) That on or about the fourteenth day of October, 1884, at Island City, Union County, State of Oregon, the above-named defendants, H. B. Glover and W. S. Wines, entered into and formed a copartnership, under the firm name and style of W. S. Wines & Co., for the purpose of carrying on and conducting, on equal terms and shares, a general saddle, harness, and hardware business; and on said last-mentioned date the said firm of W. S. Wines & Co. opened and established the said firm business at said Island City, and continued to carry on and conduct the same jointly under said firm name from said last above-mentioned date up to and including the twenty-third day of January, 1885. (2) That on the said twenty-third day of January, 1885, the said firm of W. S. Wines & Co. had a large and valuable stock of goods, wares, and merchandise, consisting of harness, saddles, bridles, blankets, leather, whips, and a general assortment of hardware on hand in said buisness, of the aggregate value of about three thousand five hundred dollars, besides fixtures and good-will of said business, together with the tools belonging thereto; and a large amount of valuable book accounts, as plaintiff is informed and believes, were then due and owing to said firm of W. S. Wines & Co. The aggregate value of said fixtures, tools, and good-will of said business, and the amount of said book accounts, was and is, at this time, unknown to this plaintiff. (3) That on the twenty-sixth day of January, 1885, the said plaintiff herein purchased of and from said defendant H. B. Glover, all his right, interest, claim, title, and demand in and to said copartnership business (the same being an undivided one-half interest of, in, and to the same), then being carried on and conducted as aforesaid by the said firm of W. S. Wines & Co., at said Island City, together with all of said H. B. Glover's interest and demand in and to the book accounts due and owing to said firm, as well as every other article of personal property or thing belonging to or conducted with the business thereof. (4) That on said last-mentioned day, June 26, 1885, at said Island City, the place where said copartnership business as aforesaid was then being carried on and conducted, the said

plaintiff notified the said defendant W. S. Wines (partner of said defendant H. B. Glover, and member of the firm of W. S. Wines & Co., and who was at said date in the full charge, control, and possession of said copartnership business for said defendant Glover and himself) that the said plaintiff had purchased of and from the said H. B. Glover, all of his right, title, interest, claim, and demand in and to said copartnership business, and the property and book accounts thereof, and then and there demanded of said W. S. Wines to be let into the joint possession, management, and control thereof with him the said W. S. Wines. (5) That said W. S. Wines refused to receive, or permit the said plaintiff to enter into or take joint possession of said copartnership business, and the property thereof, with him, the said W. S. Wines, or to allow plaintiff to exercise any control or management over the same, or at all, and did then and there prevent said plaintiff from entering into or in any manner exercising control thereof jointly with said Wines, or at all, well knowing at said time that said plaintiff had become the joint owner thereof with him, the said Wines, and that as such the said plaintiff was entitled to enter into the immediate possession of said copartnership business, and the whole thereof, jointly with him, the said W. S. Wines. (6) That theretofore, to wit, on the twenty-seventh day of January, 1885, the said W. S. Wines sold all his right, title, claim, interest, and demand in and to said copartnership business and the property thereof to the defendants Goodnough and Church; and with full knowledge of plaintiff's equal interest with him in and to the said copartnership business, and of plaintiff's right to the immediate joint possession of the said business, and the property thereof, turned over, surrendered, and delivered unto the said defendants Goodnough and Church all of the property, books, fixtures, business, and effects of and belonging to said copartnership business hereinbefore described, and defendants Goodnough and Church took said owner's interest with full knowledge of plaintiff's interest in said partnership property. (7) That thereafter, on the said twenty-seventh day of January, 1885, said plaintiff immediately notified said defendants Goodnough and Church that the said

plaintiff was the owner of an undivided one-half interest of, in, and to the said copartnership business, and the property belonging thereto purchased by the said Goodnough and Church from said W. S. Wines, and said plaintiff then and there demanded of said defendants to be put into the joint and equal possession with them of said copartnership business and the property thereof, and in the management and disposition of the same, and the whole thereof, or that the same be segregated and equally divided between said plaintiff and said defendants Goodnough and Church, and that said plaintiff be permitted to receive or enter into the immediate possession of his interest of, in, and to said business and the property thereof. (8) That said defendants Goodnough and Church refused to comply with said plaintiff's demands, and then and there denied plaintiff the right to enter into the joint possession with them of said business, or in the management, control, or disposition of the same, or any part thereof; and then and there prevented said plaintiff, and ever since have continued to prevent said plaintiff, from entering into the possession, management, or control thereof, or any part of the same jointly with them, said defendants, or otherwise; and said defendants Church and Goodnough refused, and ever since have refused, to allow or permit said plaintiff to look at or examine the books of accounts of said copartnership, or to learn in any manner the financial condition of the said firm of W. S. Wines & Co., or to take or participate in taking an account and inventory of the stock in trade, tools, and fixtures then on hand and belonging to said copartnership business, formerly carried on and conducted by said firm of W. S. Wines & Co.; and said defendants then and there wholly excluded said plaintiff from the possession, management, and control of (jointly with them or otherwise) the said business, and the property and accounts thereof. (9) That plaintiff's interest of, in, and to the business and property of said firm of W. S. Wines & Co. was at said last-mentioned date, to wit, January 27, 1885, of great value, to wit, of the sum of two thousand dollars, and that by the refusal and acts of said defendants, hereinbefore specifically set forth, the said plaintiff has been continuously from said last

above-mentioned date up to the commencement of this suit kept out of the possession of the whole of said business and the property thereof, and been deprived of the use and benefits of the same, and the whole thereof, as well as the profits to be derived therefrom, to his great damage. (10) That up to said twenty-seventh day of January, 1885, the said copartnership heretofore mentioned, existing between said Glover and Wines, under the firm name of W. S. Wines & Co., had not been, nor has it since said last-mentioned date been dissolved, and an accounting had by or between said copartnership, or by and between any of the parties who have succeeded to the respective interests of said firm of W. S. Wines & Co. in and to the said copartnership business, and the property thereof. (11) That an accounting between the members of said copartnership and of the parties thereto is necessary, that plaintiff's as well as defendants' rights and interests therein may be fully ascertained and determined in this court.

### PRAYER OF COMPLAINT.

That the firm of W. S. Wines & Co. be dissolved, and an account be taken of all the said copartnership dealings and transactions from the commencement thereof up to the 27th of January, 1885; that plaintiff be decreed to be the owner of, and entitled to the joint possession of, with said defendants Church and Goodnough, on the 27th of January, 1885, an undivided one-half interest of, in, and to the whole of said business and property belonging thereto, and to ascertain the value of said interest to be two thousand dollars; that plaintiff have judgment against said Goodnough and Church, and each of them, for the value of his said interest in said copartnership business and the property thereof on the said twenty-seventh day of January, 1885, after the same shall have been fully ascertained and determined by the court in this suit, together with legal interest on the full amount, etc., and for general relief.

To this complaint the respondent demurred on the following grounds: "*First.* The court has no jurisdiction of the subject of the action as to them. *Second.* That the complaint does not state facts sufficient to constitute a cause of suit as to them.

*Third.* That several causes of suit have been improperly united."
The court sustained the demurrer and dismissed the suit, from
which decree this appeal is taken.

The only questions, therefore, which we are called on to con-
sider are those presented by the demurrer.   (1) Two questions
seem to present themselves: *First,* What rights or interest did
the plaintiff acquire in the partnership business and property of
W. S. Wines & Co. by the purchase of the interest of H. B.
Glover therein? and *second,* what remedies has he for the
assertion and maintenance of those rights?   These two ques-
tions are so intimately blended that it will be more convenient
to consider them together.   There can be no doubt but what a
member of a copartnership may lawfully sell and transfer his
entire interest in the property and business of the firm.   He
may clothe his vendee with all of his rights, except he cannot
make him a member of the firm; the consent of the remaining
members would be necessary to do that.   Parsons on Partnership,
section 359, states the rule thus: "The purchaser would not
become a partner; but he would stand in the place of the partner
whose interest he bought, and acquire all of his rights which
were necessary to make his interest valuable and available.
That is, he would have the right to call for an account and a
settlement of the partnership concern, and to take his share of
any surplus in severalty; and a court of equity would probably
render him the same assistance in obtaining and enforcing these
rights that they would to the partner whose interest he has
bought."   So it is said by another eminent American author
(Story on Partnership, §§ 307–310) that if one partner make a
voluntary assignment of all his interest in the partnership prop-
erty and effects, that will at once dissolve the partnership and
convert the assignee or purchaser into a tenant in common with
the other partners.   And the same result follows in case of the
sale upon execution of the interest of one partner in the partner-
ship property.

2.   Under the facts stated in the complaint, the plaintiff was
tenant in common in the property and effects of the late firm of
W. S. Wines & Co. with the other defendants Goodnough and

Church.    The assignment in either case was subject to an accounting of the affairs of the late firm, and either one of such tenants in common had a right to insist upon such accounting, and for that purpose it was necessary to invoke the jurisdiction of a court of equity. (*Dyckman* v. *Valiente,* 42 N. Y. 549; 1 Story's Eq. Juris. 466; *Early* v. *Friend,* 16 Gratt. 21; 78 Am. Dec. 649; *Leach* v. *Beattie,* 33 Vt. 195; *Wright* v. *Wright,* 59 How. Pr. 176; *Hodges* v. *Pingree,* 10 Gray, 15; *Goodenow* v. *Ewer,* 16 Cal. 461; *Darden* v. *Cowper,* 7 Jones, 210.)

3. It was urged upon the argument with much confidence by the learned counsel for respondent that the plaintiff had an adequate remedy at law in this case, and for that reason a court of equity ought not to entertain jurisdiction; but we cannot accede to this view.    There are doubtless cases where, as between tenants in common of chattels, as when one of the tenants wrongfully sells the chattel held in common, a court of law may grant adequate relief in damages; but it is not perceived how it would be adequate in this case, where the extent of the interest of the parties may depend on an account; nor are courts of equity without jurisdiction in every case, where courts of law entertain it.    There is a large class of cases where courts of law and equity exercise concurrent jurisdiction; and matters of account being a subject of very ancient equity jurisdiction, equity would not lose it though courts of law should assume jurisdiction in like cases.    But in this case it is clear that a court of law could not have any jurisdiction to grant the relief to which the plaintiff by his complaint shows himself to be entitled.

The decree will therefore be reversed, and the cause remanded to the court below, with directions to overrule the demurrer and for further proceedings.